ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **MARÍA C. RIVERA LUNA**<br><br>Recurrente<br><br>v.<br><br>**CONSEJO DE TITULARES CONDOMINIO JARDINES METROPOLITANOS II**<br><br>Recurrido | KLRA202500229 | **REVISIÓN** procedente del **Departamento de Asuntos del Consumidor**<br><br>Querella Núm.: **C-SAN-20240018990**<br><br>Sobre: Condominio - Ley Núm. 104 de 25 de junio de 1958, según enmendada |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 20 de junio de 2025.

Comparece ante nos María C. Rivera Luna (señora Rivera Luna o parte querellante-recurrente) mediante el presente recurso de *Revisión Administrativa* y nos solicita que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACO) el 12 de febrero de 2025, notificada al día siguiente.[1] Mediante el referido escrito, el DACO desestimó la *Querella* presentada por la señora Rivera Luna y le impuso la suma de quinientos dólares ($500.00) en concepto de honorarios de abogados a favor del Consejo de Titulares del Condominio Jardines Metropolitanos II (Consejo de Titulares o parte querellada-recurrida).

Por los fundamentos que expondremos a continuación, confirmamos al DACO.

---

[1] Apéndice de *Revisión Administrativa,* págs.78-87.

Número Identificador
SEN2025 _____

# I

Los hechos ante nuestra consideración se originan por una *Querella*, C-SAN-2024-00018990, presentada por la señora Rivera Luna el 17 de mayo de 2024 contra el Consejo de Titulares del Condominio Jardines Metropolitanos II.[2] Alegó que objetaba la determinación del Consejo de Titulares en la Asamblea celebrada el 23 de abril de 2024 en la que se autorizó y ratificó el uso de agua y facilidades del condominio para la Finca de Todos, Inc. (Finca de Todos), siendo este un tercero que no formaba parte del régimen de propiedad horizontal, en violación a la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 2020, 31 LPRA sec. 1921, la *Ley de Acueductos y Alcantarillados de Puerto Rico*, Ley Núm. 40 de 1 de Mayo de 1945, 22 LPRA sec. 141, y sus respectivos reglamentos. Por tal razón, le solicitó a la agencia que impidiera que Finca de Todos continuara utilizando el agua y facilidades del condominio y se le compensara al condominio los gastos realizados por dicha actividad.

Luego de varios trámites procesales, incluyendo la celebración de una vista administrativa el 11 de diciembre de 2024, DACO emitió una *Resolución* el 12 de febrero de 2025, notificada al día siguiente, mediante la cual desestimó la causa de acción de la parte querellante.[3] El organismo administrativo emitió las siguientes determinaciones de hechos:

1. La parte querellante, es titular del apartamento 5-M del Condominio Jardines Metropolitanos II localizado en el Municipio de San Juan, Puerto Rico. La querellante adquirió dicha propiedad mediante la escritura pública número 378, sobre Individualización y Compraventa, otorgada el 17 de junio de 1977, ante el notario Enrique J. Lago Giberga.

2. El Condominio Jardines Metropolitanos II está sometido al régimen de Propiedad Horizontal.

3. El 15 de noviembre de 2023, la parte querellante presentó la querella número C-SAN-2023-0017278 ante el DACO, Oficina Regional de San Juan. En dicha

---

[2] Apéndice de *Revisión Administrativa*, pág. 1-11.
[3] *Íd.* págs. 78-87.

querella, la querellante alegó que la parte querellada, suplía agua al solar colindante del Condominio para un huerto, sin autorización de los condómines y en violación a las disposiciones del DACO y Autoridad de Acueductos y Alcantarillados; y solicitando que se restituya al Consejo de Titulares el gasto en exceso del consumo del agua, así como descontinuar el suplido de agua al solar contiguo.

4. El 19 de marzo de 2024 se celebró vista administrativa en el caso número C-SAN-2023-0017278, donde las partes luego de dialogar llegaron a un acuerdo de transacción.

5. El Acuerdo de Transacción consistió en:

"1. Se celebrará una asamblea el próximo 23 de abril de 2024, para discutir el asunto traído ante nos en la querella de epígrafe. Las partes acuerdan esperar la celebración de dicha asamblea para que se tome por el consejo de titulares parte y determinaciones en el presente asunto.
2. La querellante podrá participar y expresarse en dicha asamblea, donde este punto será atendido.
3. La parte querellante informa que está de acuerdo con lo informado por la querellada para dar fin al presente asunto."

6. El día 23 de abril de 2024, el DACO emitió una Resolución de la querella número C-SAN-2023-0017278, acogiendo el Acuerdo de Transacción y ordenando dar fiel y exacto cumplimiento al mismo. Dicha Resolución fue notificada a las partes el mismo día 23 de abril de 2024. La Resolución advino final, firme e inapelable.

7. El 23 de abril de 2024, el Consejo de Titulares celebró una Asamblea Extraordinaria, en cumplimiento del Acuerdo de Transacción, con el propósito de que se decidiera si se autorizaba el uso de la utilidad de agua potable para el riego del huerto comunitario y el correspondiente reembolso al Consejo de Titulares.

8. El Consejo de Titulares, en la Asamblea Extraordinaria celebrada, aprobó el uso del agua potable para el riego comunitario con el correspondiente reembolso al Consejo de Titulares por parte de la Finca de Todos, Inc., quien usa el huerto. La votación fue de 37 votos a favor, 4 abstenidos y 2 en contra.

9. El día 17 de mayo de 2024, la parte querellante presentó la querella de epígrafe, en la que alegó lo siguiente:

"*Se objeta la determinación del Consejo de Titulares del Condominio Jardines Metropolitanos II en Asamblea celebrada el 23 de abril de 2024, autorizando y ratificando uso de agua y facilidades del Condominio para beneficio de un tercero no parte del régimen de propiedad horizontal en violación a la Ley de*

*Condominios, su Reglamento y la Ley de la Autoridad de Acueductos y Alcantarillados y su reglamento al efecto. Se solicita se descontinúe la práctica y se compense al Condominio por gastos realizados en tal actividad ilegal desde sus inicios hace aproximadamente 2 años."*

10. El día 11 de diciembre de 2024, se llevó a cabo una vista administrativa, la cual se convirtió en una vista argumentativa de Derecho sobre la controversia presentada en la querella.

11. Durante la vista administrativa, se tomó conocimiento administrativo de la querella número C-SAN-2023-0017278.

12. El 23 de diciembre de 2024, este Departamento emitió una Notificación y Orden, solicitando a las partes que en el término de 15 días presentaran propuestas de Determinaciones de Hechos y Conclusiones de Derecho de la presente querella.

13. El día 10 enero de 2025, la parte querellada, solicitó la extensión del término para presentar el Memorando de Derecho, el cual fue declarada Ha Lugar.

14. El día 13 de enero de 2025, la parte querellante presentó Moción en Cumplimiento de Orden.

15. El día 16 de enero de 2025, la parte querellada presentó Memorando de Determinaciones de Hechos y Conclusiones de Derecho.

El organismo administrativo razonó que el asunto en controversia, el objeto y las partes litigantes en la *Querella* eran los mismos que fueron atendidos bajo la querella C-SAN-2023-0017278, que tuvo su fin mediante un Acuerdo Transaccional recogido en la *Resolución* del 23 de abril de 2024. Expresó que, conforme a este Acuerdo Transaccional, las partes acordaron esperar a la celebración de la asamblea para que el Consejo de Titulares fuera parte y tomara determinaciones respecto al asunto en controversia, el uso del agua y facilidades del condominio por parte de Finca de Todos. Al ser el asunto dispuesto mediante Resolución del 23 de abril de 2024 el mismo que el presentado en la *Querella* del 17 de mayo de 2024, resolvió que la controversia ante su consideración era cosa juzgada. Concluyó que las partes dispusieron de la controversia, por lo que la querellante se veía imposibilitada de re litigar la misma causa de acción.

Del mismo modo, le impuso a la parte querellante la suma de quinientos dólares ($500.00) en concepto de honorarios de abogados a favor de la parte querellada concluyendo que ésta actuó de manera temeraria al presentar una querella que contenía un asunto que ya había sido litigado en la querella C-SAN-2023-0017278.

El 5 de marzo de 2025, la señora Rivera Luna presentó su *Reconsideración* en la que alegó, entre otras cosas, que DACO erró al aplicar la doctrina de cosa juzgada pues la determinación de la agencia no constituyó una adjudicación en los méritos de la querella.[4] Del mismo modo, expresó que no procedía la imposición de honorarios de abogado por temeridad pues la disposición de la querella fue arbitraria. El 20 de marzo de 2025 el Consejo de Titulares presentó su *Oposición a "Reconsideración".*[5]

Luego de transcurrido el término sin que DACO acogiera la *Reconsideración*, el 21 de abril de 2025, la parte recurrente acudió ante nos, mediante el presente recurso *Revisión Administrativa* y nos planteó la comisión de los siguientes errores:

> ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO) AL DETERMINAR EL ARCHIVO DE LA QUERELLA DE EPÍGRAFE POR RAZÓN QUE LA MISMA ESTÁ IMPEDIDA POR LA DOCTRINA DE RES-JUDICATA O COSA JUZGADA, AL CONCLUIR QUE EL DACO "YA HABÍA RESUELTO POR TRANSACCIÓN" LA QUERELLA PREVIA C-SAN-2023-0017278, LO QUE ES INCORRECTO, PUES DACO NUNCA EMITIÓ UNA RESOLUCIÓN FINAL DISPONIENDO DE LA CONTROVERSIA PRESENTADA EN DICHA QUERELLA.
>
> ERRÓ EL DACO EN SOSTENER QUE LA ESTIPULACIÓN DENOMINADA ACUERDO DE TRANSACCIÓN DONDE LA PARTE QUERELLANTE Y LA PARTE QUERELLADA ACORDARON CELEBRAR UNA ASAMBLEA DONDE SE DISCUTIERA LO ALEGADO EN LA QUERELLA DE DESCONTINUAR LA VENTA DE AGUA QUE EL CONDOMINIO ADQUIERE DE LA AAA Y LA VENDA A UN TERCERO, NO RELACIONADO AL RÉGIMEN, LO CUAL CONSTITUYE UN ACTO ILEGAL SEGÚN LAS LEYES IMPERATIVAS, CONSTITUYE UN CONTRATO DE TRANSACCIÓN QUE IMPIDE LA RADICACIÓN DE SEGUNDA QUERELLA, BAJO LA DOCTRINA RES JUDICATA.

---

[4] Apéndice de *Revisión Administrativa*, pág. 89-108.
[5] *Íd.* págs. 109- 121.

ERRÓ EL DACO AL ORDENAR LA DESESTIMACIÓN DE LA QUERELLA NÚM. C-SAN-2024-0018990 POR LA RAZÓN DE QUE LA CONTROVERSIA HABÍA SIDO ADJUDICADA EN UN CASO ANTERIOR (C-SAN-2023-0017278) SIN OFRECER A LA PARTE QUERELLANTE EL DEBIDO PROCESO DE LEY Y SIN EXAMINAR LOS MÉRITOS DE DICHA QUERELLA, LA CUAL ESTABLECE PRIMA FACIE UNA ACCIÓN TOMADA POR EL CONSEJO DE TITULARES QUE VIOLA LA LEY DE CONDOMINIOS DE PUERTO RICO, LA ESCRITURA MATRIZ Y EL REGLAMENTO DEL CONDOMINIO, ADÉMAS DE CONSTITUIR UN DELITO PÚBLICO.

ERRÓ EL DACO AL CONCLUIR QUE LA QUERELLA DE EPÍGRAFE VERSA SOBRE LAS MISMAS ALEGACIONES QUE LA QUERELLA PREVIA, NÚM. C-SAN-2023-0017278, Y QUE NO TIENE DEFENSAS POR LO QUE LA PARTE QUERELLANTE ACTUÓ DE MANERA TEMERARIA, AL PRESENTAR LA QUERELLA NÚM. C-SAN-2024-0018990, EN VISTA DE LA ESTIPULACIÓN DENOMINADA "ACUERDO DE TRANSACCIÓN" ALCANZADO EN LA QUERELLA PREVIA, Y AL IMPONERLE A LA PARTE QUERELLANTE LA SUMA DE $500.00 EN CONCEPTO DE HONORARIOS DE ABOGADO POR TEMERIDAD, A FAVOR DE LA PARTE QUERELLADA.

Por su parte, el 31 de mayo de 2025 la parte recurrida presentó su *Alegato en Oposición a Recurso de Revisión Administrativa.*

Contando con la comparecencia de las partes, procedemos a resolver.

**II**

**A**

El Artículo 4.006 (c) de la *Ley de la Judicatura* de 2003, Ley Núm. 201-2003,4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99 (2023); Torres Rivera v. Policía de PR, 196 DPR 606 (2016); IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712 (2012).* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección,

por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la *Ley de Procedimiento Administrativo Uniforme* (LPAU), supra, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, 3 LPRA sec. 9641, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales se enfoca en determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. Se. 4.5 de LPAU, 3 LPRA sec.9675.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, supra, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025), nuestro máximo foro revisitó el trato que los tribunales han de concederle a las determinaciones de hecho de las agencias administrativas. Lo anterior, a la luz del marco jurídico provisto por el Artículo 4.5 de la LPAU, supra, sec. 9675, y lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

Según dicho artículo, supra, las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Nuestro máximo foro indicó que, en reiteradas ocasiones, sostuvo que las conclusiones e interpretaciones de las agencias merecían gran consideración, y que la revisión judicial se limitaba a determinar si estas habían actuado arbitraria o ilegalmente. *Vázquez v. Consejo de Titulares*, supra. Sin embargo, advirtió que esta consideración no equivalía a una renuncia de nuestra función revisora. Conforme a Loper Bright Enterprises v. Raimondo, supra, el Tribunal Supremo de Puerto Rico concluyó que la interpretación de la ley "es una tarea que corresponde inherentemente a los tribunales*". Vázquez v. Consejo de Titulares*, supra. Por lo tanto, será deber de los tribunales revisar las conclusiones de derecho de las agencias en todos sus aspectos, guiados por los mecanismos interpretativos propios de los tribunales y no de las agencias.

Conforme a la nueva normativa, los tribunales locales deben ejercer un juicio independiente al de la agencia administrativa, cuando les corresponde decidir si una agencia ha actuado dentro del marco de las facultades que se le han delegado estatutariamente. *Vázquez v. Consejo de Titulares*, supra. Pero, contrario a la práctica pasada, los tribunales no vienen obligados a darle deferencia a las interpretaciones de derecho realizadas por las agencias administrativas simplemente cuando la ley es ambigua. *Íd.* Interprestando *Loper Bright Enterprises v. Raimondo*, supra,

concluye que esto es así, pues son los tribunales, bajo su función judicial, los que deben ejercer un juicio independiente al determinar el significado de las disposiciones estatutarias interpretadas por las agencias administrativas. *Íd.* El Tribunal Supremo aclara, que al ejercer dicho criterio los tribunales pueden apoyarse de las interpretaciones realizadas por las agencias, pues son estas las que tienen responsabilidad de aplicar ciertas leyes. *Íd.* No obstante, expresa que:

> ...tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.*

**B**

La Asamblea Legislativa creó el Departamento de Asuntos del Consumidor con el propósito primordial de "vindicar e implementar los derechos del consumidor, frenar las tendencias inflacionarias; así como el establecimiento y fiscalización de un control de precios sobre los artículos y servicios de uso y consumo". Artículo 3 de la Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341b (Ley Núm. 5). Asimismo, el Artículo 6 (d) de la Ley Núm. 5, faculta al Secretario del DACO a poner en vigor, implementar y vindicar los derechos de los consumidores a través de procesos adjudicativos para así adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho. 3 LPRA sec. 341e.

**C**

La *Ley de Condominios de Puerto Rico,* Ley Núm. 129 de 2020, 31 LPRA sec.1921a, se aprobó con el propósito de viabilizar la propiedad individual sobre un apartamento, que es parte de un edificio sometido al Régimen de Propiedad Horizontal. Bajo este régimen, el titular tiene derecho de disfrutar su apartamento y las

áreas comunes, siempre que ello no menoscabe el derecho de los titulares de disfrutar sus propiedades. *Íd.*

Bajo el Artículo 65, los titulares quedan legitimados para impugnar toda acción u omisión realizada por la Junta de Directores, el Administrador Interino, el Agente Administrador, así como los acuerdos del Consejo de Titulares en los siguientes supuestos:

> a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

Artículo 65 del Ley Núm. 129 de 2020, 31 LPRA sec.1923j.

El término establecido para presentar las impugnaciones de los acuerdos o determinaciones es de treinta días (30) contados a partir de la fecha en que se tomaron, si se hizo en la presencia del titular. *Íd.* No obstante, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación, el término para impugnar sería dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo. *Íd.*

Cuando las impugnaciones estén encaminadas a cuestionar la violación a las disposiciones de la Ley Núm. 129 de 2020, *supra*, de la escritura matriz o del reglamento del condominio, estas prescribirán a los dos (2) años. *Íd.* El término se computará a partir de la fecha en que se tomó tal acción, omisión o acuerdo si fue en la presencia del titular. *Íd.* Si no fueron realizadas en la presencia del titular, será a partir de la notificación de este. *Íd.*

Respecto al foro con jurisdicción para atender las reclamaciones de los titulares, el Artículo 66 de la Ley Núm. 129 de 2020, 31 LPRA sec.1923k, establece que:

El Departamento de Asuntos del Consumidor tendrá una División Especial de Adjudicación de Querellas de Condominios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamento dedicado a vivienda. El Secretario tendrá la capacidad de nombrar el personal necesario para la pronta atención de las querellas presentadas por los titulares de apartamentos al amparo de esta Ley contra el Consejo de Titulares o el Agente Administrador, o por la Junta de Directores al amparo de aquellas leyes especiales aplicables.

Se faculta además al Secretario para adoptar y/o modificar los reglamentos necesarios para la adjudicación de las querellas presentadas en el Departamento y para el fiel cumplimiento de esta Ley.

Sin perjuicio de lo anterior, o de las acciones judiciales que puedan presentarse, toda querella relacionada con la cubierta o los términos y condiciones del contrato de seguros, será referida, a la Oficina del Comisionado de Seguros de Puerto Rico para su consideración. Se faculta al Comisionado, de ser necesario, a adoptar y/o modificar los reglamentos necesarios para la adjudicación de las querellas que surjan bajo el Régimen de Propiedad Horizontal.

**D.**

En el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311, no existe una disposición equivalente a la establecida en el Artículo 1204 del Código Civil de 1930, 31 LPRA sec. 3343, reconociendo la doctrina de cosa juzgada como modo de derrotar presunciones. No obstante, mediante la jurisprudencia y la Regla 6.3 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 6.3, la figura de cosa juzgada sigue presente en nuestro ordenamiento jurídico.

La doctrina de cosa juzgada surte efecto cuando entre un pleito anterior, que fue resuelto mediante sentencia, y un pleito posterior: (1) se litigan entre las mismas partes, (2) la misma causa de acción y cosas, (3) cuestiones ya litigadas y adjudicadas, y (4) aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción previa. *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 221-222 (2012). Esta doctrina responde al interés por parte del Estado de que los casos tengan finalidad y para proteger a

los ciudadanos a ser expuestos a múltiples procesos judiciales. *Mun. de San Juan v. Bosque Real, S.E.,* 158 DPR 743, 769 (2003).

En el ámbito administrativo, la doctrina de cosa juzgada opera en las siguientes vertientes: (1) dentro del mismo organismo administrativo; (2) entre una agencia a otra y (3) entre la agencia y los tribunales. *Íd.* pág. 770. La aplicación de la doctrina no es de manera automática ni absoluta, pues los tribunales poseen el poder de modificar y rechazar las determinaciones administrativas cuando sea más justo y conveniente en orden al interés público. *Íd.* citando a *Acevedo v. Western Digital Caribe, Inc.,* 140 DPR 452, 454 (1996) *Justino Cruz Echeandía v. Autoridad de Energía Eléctrica* KLRA0400285 (2004). Del mismo modo, existe la facultad de evaluar si las partes han podido litigar de manera oportuna y adecuada la controversia presentada en el foro administrativo. *Íd.*

### E.

Mediante el contrato de transacción, por concesiones recíprocas, las partes ponen fin a su litigio o incertidumbre sobre una relación jurídica. Artículo 1497 de Código Civil de Puerto Rico 2020, 31 LPRA sec. 10641. Los elementos característicos de un contrato de transacción son: "(1) la existencia de una controversia o relación jurídica incierta litigiosa; (2) la intención de las partes de eliminar o superar esa controversia; y (3) concesiones recíprocas". *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 903 (2012). Los contratos de transacción se interpretan de manera restrictiva, por lo que al interpretar cuáles son los efectos, se debe establecer primero qué fue lo que se pactó. *Íd.* pág. 904.

Los contratos transaccionales pueden ser judiciales o extrajudiciales. Los contratos transaccionales extrajudiciales son aquellos en donde las partes alcanzan un acuerdo que elimina la controversia al comenzar el pleito o durante el pleito, sin la intervención judicial. *Demeter Int'l v. Srio. Hacienda,* 199 DPR 706,

730 (2018). Mientras que los contratos transaccionales judiciales son aquellos en los cuales las partes, luego de comenzado el pleito, eliminan la disputa y solicitan incorporar el acuerdo al proceso judicial, teniendo el efecto de culminar el pleito. *Íd.*

La transacción produce el efecto de cosa juzgada, "...pero no procederá la vía de apremio sino tratándose del cumplimiento de la transacción judicial". Artículo 1500 de Código Civil de Puerto Rico 2020, 31 LPRA sec. 10644; *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 872. Esto quiere decir que las partes deben considerar los puntos discutidos como definitivamente resueltos, por lo que no pueden volver nuevamente sobre éstos. *Íd.* Y usualmente la transacción judicial es la única con fuerza para pedir su ejecución como si se tratase de una sentencia firme. *Íd.*

**F.**

La Sección 3.21 de la LPAU, 3 LPRA sec. 9661, establece que las agencias administrativas, conforme sus poderes cuasi judiciales, pueden imponer sanciones en los siguientes casos:

> (a) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá ordenarle que muestre causa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.
>
> (b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.
>
> (c) **Imponer costas y honorarios de abogados, en los mismos casos que dispone la Regla 44 de**

**Procedimiento Civil, según enmendada.** (Énfasis Suplido).

La Regla 44.1 de Procedimiento Civil de Puerto Rico, supra, en su inciso (d) regula lo relacionado a honorarios de abogados. En lo pertinente establece:

(d) Honorarios de abogado. En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

La temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 504 (2010). Esta imposición tiene el propósito de disuadir la litigación frívola y fomentar mediante transacciones, la compensación a la parte victoriosa del pleito por los daños económicos y molestias causados por la temeridad de la otra parte. *Íd.* pág. 505.

Una vez que el foro concluye que una parte ha actuado de manera temeraria, corresponde la imposición de honorarios de abogado. *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005). Esta determinación descansa en la sana discreción del tribunal, por lo cual los foros revisores solo intervendrán cuando de tal actuación surja un claro abuso de discreción. *Íd.*

### III

En el caso ante nuestra consideración, la parte recurrente nos plantea que el DACO incidió al determinar el archivo de la *Querella,* C-SAN-2024-00018990, fundamentándose en la doctrina de cosa juzgada pues alega que, en la *Querella* C-SAN-2023-0017278, DACO nunca emitió una resolución final disponiendo de la controversia

presentada en la misma. En su segundo señalamiento de error, la parte recurrente nos apuntala que DACO erró al sostener la estipulación de la *Querella* C-SAN-2023-0017278, denominado "acuerdo de transacción", como un contrato de transacción que impedía la radicación de una segunda querella. En su tercer señalamiento de error, la parte recurrente nos plantea que el DACO incidió al ordenar la desestimación de la *Querella,* C-SAN-2024-00018990 fundamentándose en que la controversia había sido adjudicada en el caso anterior, C-SAN-2023-0017278, sin ofrecerle el debido proceso de ley y sin examinar los méritos de la querella. Por guardar relación los errores señalados, procedemos a atenderlos de manera conjunta.

En el caso ante nuestra consideración, surge del expediente administrativo que el 15 de noviembre de 2023 la parte recurrente presentó una *Querella* en el caso C-SAN-2023-0017278 contra los recurridos en donde alegó que la administración del condominio autorizó la instalación de una toma de agua del suplido del condominio para el uso de un solar ubicado en el lado oeste de la propiedad.[6] Arguyó que esto ocurrió sin una notificación a los condómines, a pesar de existir oposición. Adujo que en varias ocasiones instaló una toma de agua para el solar aledaño con un gasto de agua en exceso por cerca de cinco mil setecientos dólares ($5,700.00). Por tal razón, solicitó al DACO que los gastos en exceso de agua debían ser restituidos a la Asociación de Condómines y se debía descontinuar la toma y el suplido de agua al solar contiguo del lado oeste del edificio.

A pesar de lo anterior, el 23 de abril 2024 el DACO emitió una *Resolución* en la que acogió un Acuerdo de Transacción alcanzado entre las partes.[7] Conforme al mismo, las partes acordaron celebrar

---

[6] Véase, Expediente Administrativa del DACO presentado el 7 de mayo de 2025.
[7] Véase, Apéndice de *Revisión Administrativa*, págs. 74-77.

una asamblea ese mismo día para discutir el asunto traído en la *Querella*; es decir, la autorización de Finca de Todos para utilizar agua potable del condominio y el posible reembolso a favor del Consejo de Titulares con el propósito de darle fin al asunto vertido en dicha *Querella*. Así las cosas, surge de la *Acta Asamblea Extraordinaria*, que el 23 de abril de 2024, el Consejo de Titulares celebró una Asamblea Extraordinaria en la que se autorizó a la Finca de Todos utilizar el agua potable del condominio para el riego del huerto comunitario. Lo anterior, **mediante treinta y siete (37) votos a su favor; cuatro (4) en contra; y dos (2) abstenidos**.[8]

Luego, el 17 de mayo de 2024 la parte recurrente presentó una segunda *Querella*, C-SAN-2024-00018990, contra la parte recurrida en la que solicitó al DACO que impidiera que Finca de Todos continuara utilizando el agua y facilidades del condominio y se le compensara al condominio los gastos realizados en tal actividad.[9]

Tomando en consideración lo antes expuesto, y luego de una evaluación de los casos C-SAN-2023-0017278 y C-SAN-2024-00018990, concluimos que no erró el DACO al desestimar la causa de acción por ser cosa juzgada. Coincidimos con la agencia administrativa en que el asunto en controversia, el objeto y las partes litigantes en la *Querella* C-SAN-2024-00018990 eran los mismos que fueron atendidos bajo la querella C-SAN-2023-0017278. Quedó claro, que la controversia planteada en la querella C-SAN-2024-00018990 tuvo su fin mediante un Acuerdo Transaccional recogido en la *Resolución* del 23 de abril de 2024. Este acuerdo transaccional fue cumplido mediante la celebración de la Asamblea Extraordinaria en el que mediante el voto de la mayoría, se autorizó el uso del agua y facilidades del condominio por parte de

---

[8] Véase, Apéndice de *Revisión Administrativa*, págs. 8-11.
[9] *Íd.* págs. 1-11.

Finca de Todos. Debido a que las partes dispusieron de la controversia, mediante un acuerdo transaccional y este fue cumplido a cabalidad, la parte recurrente se ve imposibilitada de re litigar la causa de acción por ser cosa juzgada.

Como su cuarto y último planteamiento de error la parte recurrente nos señala que el DACO erró al concluir que la *Querella* C-SAN-2024-00018990 versaba sobre las mismas alegaciones que la *Querella* previa C-SAN-2023-0017278 e imponerle el pago de quinientos dólares ($500.00) en concepto de honorarios de abogados por presuntamente actuar en temeridad.

Luego de un análisis minucioso de los hechos de este caso, coincidimos con el DACO en que la parte recurrente actuó de manera temeraria al presentar nuevamente en la *Querella* C-SAN-2024-00018990 un asunto que ya había sido atendido en la *Querella* C-SAN-2023-0017278. Debido a que no encontramos indicios de abuso de discreción en la imposición de honorarios de abogados a la parte recurrente por parte del DACO, damos completa deferencia al organismo administrativo en tal imposición.

**IV**

Por los fundamentos antes expresados, confirmamos al DACO.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones